## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**WILLIAM AULTMAN,**

      **Plaintiff,**

                             **Case No. 2:20-cv-3304**

    **vs.**                            **Magistrate Judge Elizabeth P. Deavers**

**TIM SHOOP, et al.,**

      **Defendants.**

### OPINION AND ORDER

Plaintiff, a state inmate at the Chillicothe Correctional Institution ("CCI"), proceeding through counsel, filed this prisoner civil rights action alleging a violation of his Eighth Amendment rights under 42 U.S.C. § 1983 and state law. With the consent of the parties (ECF No. 26), pursuant to 28 U.S.C. § 636(c), this matter is before the Court for consideration of Defendant Warden Tim Shoop's Second Motion to Dismiss. (ECF No. 33.) Plaintiff has filed a Response (ECF No. 34) and Defendant Shoop has filed a Reply. (ECF No. 22.) For the following reasons, the Motion to Dismiss is **GRANTED**.

### I.      BACKGROUND

Plaintiff filed this action on June 29, 2020, asserting claims under 42 U.S.C. § 1983 and state law against the State of Ohio, the Department of Rehabilitation and Correction.[1] and Tim Shoop, the Warden at CCI, in his individual and official capacities. In the original Complaint, the primary relief sought was Plaintiff's release from custody. Because a challenge to the fact or

---

[1] As the Court previously noted in its Opinion and Order dated February 11, 2021 (ECF No. 30), while it appeared that Plaintiff intended to sue the State of Ohio, it was not entirely clear whether Plaintiff also specifically intended to sue the ODRC.

duration of confinement should be brought as a petition for habeas corpus and is not the proper

subject of a civil rights action brought pursuant to § 1983, in the Initial Screen Report and

Recommendation issued on July 9, 2020, the Court recommended that Plaintiff's § 1983 claim

be dismissed and that supplemental jurisdiction over Plaintiff's state law claim not be exercised.

(ECF No. 7.)  However, noting that Plaintiff also appeared to be requesting unspecified

injunctive or declaratory relief, the Court further recommended that Plaintiff be granted leave to

amend his complaint.  (*Id.*)  By Order dated July 27, 2020, the District Judge previously

assigned to this case overruled Plaintiff's objections to the Report and Recommendation and

granted Plaintiff 21 days to amend.  (ECF No. 9.)

Plaintiff filed his Amended Complaint on August 17, 2020.  (ECF No. 12.)  All

Defendants filed a motion to dismiss on October 5, 2020. (ECF No. 20.)  By Opinion and Order

dated February 11, 2021 (ECF No. 30) the Court granted, in part, and denied, in part, the motion

to dismiss.  The motion was granted as to all of Plaintiff's claims against the State of Ohio and

the ODRC, and Plaintiff's state law claims against Warden Shoop.  Those claims were dismissed

without prejudice for lack of subject matter jurisdiction based on Eleventh Amendment

immunity.  The motion to dismiss for insufficiency of process and insufficiency of service of

process under Rules 12(b)(4) and 12(b)(5) was granted to the extent that the Court ordered the

putative service of process on Warden Shoop quashed.  The Court granted Plaintiff thirty days to

re-serve Defendant Shoop and file proof of service and explained that:

> Until Warden Shoop is properly served with the summons and complaint, this Court
> lacks personal jurisdiction over him and, therefore, cannot address the merits of the
> Motion to Dismiss on the basis of lack of personal jurisdiction under Rule 12(b)(2)
> or for failure to state a claim upon which relief can be granted under Rule 12(b)(6).
> Accordingly, Defendants' Motion to Dismiss to the extent that it asserts lack of
> personal jurisdiction under Rule 12(b)(2) or the failure to state a claim upon which
> relief can be granted is **DENIED** without prejudice to refiling upon service on
> Warden Shoop.

(ECF No. 30 at 12.)

On March 4, 2021, summons was returned executed as to Defendant Shoop reflecting service on March 2, 2021. (ECF No. 32.) On March 23, 2021, Defendant Shoop filed his second and current Motion to Dismiss.

As noted, following the Court's Opinion and Order dated February 11, 2021 (ECF No. 30), only Plaintiff's § 1983 claim alleging a violation of his Eighth Amendment rights and seeking injunctive and declaratory relief against Defendant Shoop in his official capacity remains pending.

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd.*, *P'ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz–Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III.    ANALYSIS

Initially, the Court notes that Defendant Shoop's current motion again relies, at least in part, on Federal Rule of Civil Procedure 12(b)(4) and (5) and by extension Rule 12(b)(2) as grounds for dismissal.[2] The Court will address this matter only briefly. As currently framed, Defendant

---

[2]Defendant Shoop also seeks dismissal on the grounds of qualified immunity and Plaintiff's failure to exhaust. "'[I]mmunity only precludes claims for monetary damages against officials in their individual capacities, and not claims for injunctive or declaratory relief.'" *Bonds v. Daley*, No. 18-5666, 2019 WL 2647494, at *3 (6th Cir. May 17, 2019) (quoting *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996)); *see also Rouse v. Washington*, No. 20-CV-11409, 2021 WL 2434196, at *4 (E.D. Mich. June 15, 2021) (the personal defense of qualified immunity is unavailable when only official capacity claims remain against named defendants.) Further, as

Shoop's argument appears to be limited to challenging the nature of the summons served upon him.  As the Court understands it, Defendant Shoop contends, without citation to authority beyond his interpretation of the language of Rule 4 itself, that process here is insufficient because the summons served was a copy of the summons previously issued on September 9, 2020.  (ECF No. 33 at 6-7.)  To be clear, Defendant Shoop is not contending that he did not receive a summons or that the summons failed to comply in any way with the requirements of Rule 4(a)(1).  Additionally, Defendant Shoop has not asserted any prejudice.   Under the circumstances of this case, the Court views Defendant Shoop's argument as raising what can be described only as an alleged technical error.  In light of this fact, and Defendant Shoop's failure to cite any prejudice, the Court does not find that dismissal on this basis is warranted here.  *See generally Rose v. Bersa*, 327 F.R.D. 628, 633 (S.D. Ohio 2018) (explaining that, even assuming defendant had received a summons that did not bear the Clerk's signature, such an error would be a non-prejudicial, technical defect, and under the facts of that case, would not warrant dismissal).   Moreover, to the extent that Defendant Shoop cites Rule 12(b)(5) (or by extension Rule 12(b)(2)), he fails to set forth any serious argument challenging the sufficiency of service of process beyond pointing out in a footnote that Plaintiff failed to "verify that the person serving the summons and Complaint was over the age of eighteen and not a party to the case."  (ECF No. 33 at n.2).  Absent a more well-developed argument on this issue, the Court cannot conclude that Defendant Shoop has raised a sufficient basis for dismissal.

---

Plaintiff notes, "the PLRA exhaustion requirement is not jurisdictional" and therefore a court can "dismiss plainly meritless claims without first addressing what may be a much more complex question ... whether the prisoner did in fact properly exhaust available administrative remedies." *Kramer v. Wilkinson*, 302 F. App'x 396, 398 (6th Cir. 2008) (quoting *Woodford v. Ngo,* 548 U.S. 81, 101 (2006)).

Having dispensed with these preliminary matters, the Court now considers whether Plaintiff has alleged an ongoing violation of federal law as required for an award of prospective relief. Simply stated, in the absence of an underlying constitutional violation, there can be no official capacity liability. *Mason v. Eddy*, No. 1:18 CV 2968, 2019 WL 3766804, at *14 (N.D. Ohio Aug. 9, 2019) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Ali v. Betts*, No. 1:18-CV-1201, 2018 WL 5839519, at *5 (W.D. Mich. Nov. 8, 2018) (in the absence of allegations demonstrating constitutional violations, Plaintiff is not entitled to prospective injunctive relief); *Lyle v. George*, No. 1:15-0063, 2017 WL 3633745, at *11 (M.D. Tenn. Aug. 7, 2017), *report and recommendation adopted*, No. 1:15-CV-00063, 2017 WL 3623744 (M.D. Tenn. Aug. 23, 2017) ("There is no basis upon which Plaintiff would be entitled to injunctive relief against Defendants without an underlying showing that he suffered a violation of his constitutional rights.").

Plaintiff characterizes his claim as arising under the Eighth Amendment. This is consistent with the body of law that has emerged in the wake of the COVID-19 pandemic. *See, e.g., McCrary v. DeWine*, No. 1:20-CV-388, 2021 WL 320737, at *3–4 (S.D. Ohio Feb. 1, 2021), *report and recommendation adopted,* No. 1:20CV388, 2021 WL 1087465 (S.D. Ohio Mar. 22, 2021) (citing *Cameron v. Bouchard*, 815 F. App'x 978, 984-85 (6th Cir. 2020 and *Blackburn v. Noble*, No. 3:20-cv-46, ─── F.Supp.3d ───, 2020 WL 4758358, at *5-6 (E.D. Ky. Aug. 17, 2020)). As explained in *McCrary*:

> In *Cameron*, the Sixth Circuit reiterated the relevant standard as follows:
>
>> Conditions-of-confinement claims are assessed under the "deliberate indifference" framework. *See* [*Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)]. This framework requires plaintiffs to meet two requirements. The first is "objective[ ]," and it requires the inmate to "show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer [v.*

> *Brennan*], 511 U.S. [825,] 833 [ (1994) ] (*citing Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). The second is "subjective," and it requires the inmate to "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970). The official must have a subjective "state of mind more blameworthy than negligence," akin to criminal recklessness. *Farmer*, 511 U.S. at 835, 839–40, 114 S.Ct. 1970.

*Id*. (quoting *Cameron*, 815 F. App'x at 984). Further, applying this standard in the COVID-19 context, courts routinely have found that the objective component of a deliberate indifference claim has been met. *See Smith v. DeWine*, 476 F.Supp.3d 635, 662 (S.D. Ohio 2020); *Perez-Perez v. Adducci*, 459 F. Supp. 3d 918, 926–27 (E.D. Mich. 2020)). As explained by the Court in *Smith:*

> This Court agrees with the other district courts across the country [that] have found COVID-19 to be an objectively intolerable risk of harm to prisoners when it enters a prison. "There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious and fatal harm to prison inmates." *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020); *see also Wilson v. Williams*, 455 F.Supp.3d 467, 478 (N.D. Ohio 2020) (finding petitioners obviously satisfied the objective requirement stating "[a]t this moment a deadly virus is spreading amongst [the prison] population and staff," which can lead to pneumonia, diminished oxygen, organ failure, and death.); *Money v. Pritzker,* 453 F.Supp.3d [1130, 1131 (N.D. Ill. 2020) (noting that that "nobody contests the serious risk that COVID-19 poses to all inmates and prison staff, and even more to the most vulnerable inmates"); *Wilson v. Williams*, 961 F.3d 829, 842 (6th Cir. 2020) (finding a substantial risk of serious harm satisfying the objective element of the Eighth Amendment based on the conditions in an Ohio prison in light of COVID-19).

*Id.* at 662.

Accordingly, whether Plaintiff has stated a viable Eighth Amendment claims turns on his allegations directed to the subjective component. A review of Plaintiff's limited allegations, however, reveals that he has failed to set forth facts upon which the Court could rely to conclude that the subjective prong is satisfied. For example, Plaintiff alleges that, given his age, he is in a

7

vulnerable group, that the housing at CCI includes "combo" cells or common areas, and that social distancing is impossible. (ECF No. 12 at ¶¶ 7, 13, 14.) At the same time, however, other allegations of the Amended Complaint indicate that at least some protective measures are in place at CCI. For example, Plaintiff alleges that "[i]n Chillicothe where the Plaintiff is an inmate, there have been three deaths from COVID-19, 66 currently positively confirmed COVID-19 cases, 69 inmates in isolation and eleven awaiting testing results for COVID-19 according to the ODRC website August 17, 2020." (*Id*. at ¶ 12.) These latter allegations affirmatively indicate that both an active testing procedure and a protocol requiring isolation, either in response to positive results or otherwise, has been instituted at CCI. Further, the intent of certain other allegations is simply unclear. That is, Plaintiff notes that a masking order was in place in Ohio (*Id*. at ¶ 8) but also states "the Governor had been easing these restrictions, [but] the conditions in the State's prisons have not been eased." (*Id*. at ¶ 9.)

Courts have found such generalized and conclusory allegations insufficient to state an Eighth Amendment claim. For example, limitations imposed on social distancing as a result of the reality of prison life have been found insufficient to rise to a deliberately indifferent unreasonable failure to act. As courts have recognized, "the CDC's own guidance 'presupposes that some modification of its social-distancing recommendations will be necessary in institutional settings.'" *Blackburn v. Noble*, 479 F.Supp.3d 531, 541 (E.D. Kent. 2020) (citing *Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020)). Further,

> the fact that COVID-19 has spread among [ ] inmates does not establish ... the necessary state of mind to satisfy the subjective deliberate indifference prong as to the safety measures implemented to protect inmates from COVID-19. *See Farmer*, 511 U.S. at 844, 114 S.Ct. 1970 (the fact that "the harm ultimately was not averted" does not demonstrate deliberate indifference); *Wilson*, 961 F.3d at 841 (finding "while the harm imposed by COVID-19 on inmates at Elkton ultimately [is] not averted, the BOP has responded reasonably to the risk and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights," noting evidence

> that the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, providing mask, and engaging in efforts to expand testing "demonstrate the opposite of a disregard of a serious health risk") (internal quotations and citations omitted).

*Id.* at 541-542 (footnote omitted); *see also McCrary v. DeWine,* No. 1:20-CV-388, 2021 WL 320737, at *4 (S.D. Ohio Feb. 1, 2021) "(Plaintiffs' general conclusory allegation that the prison system is ill-equipped for social distancing or protecting inmates is insufficient to state a claim."). At the same time, courts have found the testing and isolation of inmates, actions affirmatively alleged in the Amended Complaint to have been undertaken at CCI, to be reasonable responses to the risks presented by COVID-19.[3] *Wilson*, 961 F.3d at 841–42.

Notably, Plaintiffs' minimal allegations stand in direct contrast to those made in recent cases where courts have allowed COVID-related Eighth Amendment official capacity claims to survive either an initial screening or a motion to dismiss. For example, in *Hudson v. CoreCivic*, No. 3:21-CV-00319, 2021 WL 2952944, at *1 (M.D. Tenn. July 14, 2021), the plaintiff alleged the failure to quarantine new and symptomatic prisoners, failure to test symptomatic prisoners, refusal to give prisoners masks or sanitation materials, understaffing, placing "quarantine cells in close quarters with non-exposed prisoners," and failure to train its employees "on how to safely house inmates during the COVID-19 pandemic" and on the "structural integrity of the prison cell security locks." *Id.* Additionally, in *Rouse v. Washington*, No. 20-CV-11409, 2021 WL

---

[3]Further, although not directly relevant here, the Court notes that the coordinated response between all of ODRC's facilities instituted by the Director in response to COVID-19 has been found to be reasonable. *See, e.g., Jones v. DeWine*, No. 2:20-CV-3301, 2021 WL 1056779, at *8 (S.D. Ohio Mar. 19, 2021). This response has included educating staff and inmates, tracking and distributing PPE, implementing social distancing measures among staff and inmates, increasing cleaning and sanitizing, screening visitors, staff, and inmates, cancelling visitation, quarantining those with symptoms, and implementing other policies designed to prevent COVID-19's spread. *Id.*

2434196, at *8-10 (E.D. Mich. June 15, 2021) plaintiffs alleged the defendants' failure to provide them with regular access to hand soap, despite the fact that (i) Governor Gretchen Whitmer's Executive Order 2020-29 regarding MDOC COVID-19 safety protocols called for ensuring inmates' access to soap and water sufficient for regular handwashing, (ii) the Centers for Disease Control and Prevention's interim guidance on COVID-19 in correctional facilities called for providing inmates with a supply of hand soap sufficient to allow frequent handwashing and, (iii) MDOC's COVID-19 preparedness plan called for housing units to maintain an adequate supply of cleaning supplies. As discussed, Plaintiff's allegations are not of a similar nature but confirm that reasonable protective measures have been undertaken.

In sum, although Plaintiff disagrees with the sufficiency of the actions Defendant Shoop has taken at CCI in response to COVID-19 and apparently wants more to be done, he has not alleged facts sufficient to demonstrate an Eighth Amendment violation. Accordingly, Plaintiff's claims for injunctive and declaratory relief against Defendant Shoop in his official capacity are **DISMISSED** in their entirety.

### IV.

For the foregoing reasons, Defendant Shoop's Second Motion to Dismiss (ECF No. 33) is **GRANTED.** This case is **DISMISSED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor the of the Defendants.

**IT IS SO ORDERED.**

/s/ *Elizabeth A. Preston Deavers*

**DATED: August 17, 2021**                    **ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**

10